# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) NATASHA DODSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-00221-TCK-FHM |
| | ) | |
| (1) COUNTY COMMISSIONERS OF MAYES | ) | |
| COUNTY; | ) | JURY TRIAL DEMANDED |
| (2) MAYES COUNTY SHERIFF | ) | |
| MIKE REED, officially and individually; | ) | |
| (3) MAYES COUNTY UNDER SHERIFF | ) | |
| GARY SHRUM, officially and individually; | ) | |
| (4) KYLE MURRY, officially and individually; | ) | |
| (5) JENNIFER EASTWOOD, individually, | ) | |
| (6) DEREK DAVIS, individually, and | ) | |
| (7) JOHN DOES NOS. 1-8, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Comes Now the Plaintiff, Natasha Dodson ("Dodson"), and for her Complaint against the

Defendants, alleges and states, as follows:

### PARTIES, JURISDICTION AND VENUE

1. Dodson is a resident of Mayes County, Oklahoma.

2. On or about October 22, 2014, notice was given to the State of Oklahoma, the County, and

the Sheriff Department pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151

et seq., and no reply was received within ninety (90) days thereafter.

3. On information and belief, Defendants the County, the Sheriff Department, Mike Reed,

Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, and John

Does Nos. 1-8, are Mayes County, Oklahoma residents.

4.  At all times material hereto, Mike Reed served as the Sheriff of Mayes County a supervisory position and was directly involved in the creation and implementation of Sheriff Department policies, oversight and training of employees, and directly involved in Dodson's incarceration, treatment, and care.

5.  At all times material hereto, Gary Shrum served as the Under Sheriff of Mayes County a supervisory position and was directly involved in the creation and implementation of Sheriff Department policies, oversight and training of employees, and directly involved in Dodson's incarceration, treatment, and care.

6.  At all times material hereto, Kyle Murry served as the Jail Administrator of Mayes County a supervisory position and was directly involved in the creation and implementation of Sheriff Department policies, oversight and training of employees, and directly involved in Dodson's incarceration, treatment, and care.

7.  Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, are employees, agents, or affiliates of the Sheriff and County whose acts, or omissions to act, gave rise to the claims herein.

8.  A substantial part of the events or omissions giving rise to Dodson's claims occurred in Mayes County, Oklahoma; one or more of the defendants reside in Mayes County, Oklahoma; and venue is proper with this Court.

**FACTUAL ALLEGATIONS**

9.  On or about February 26, 2014, Dodson was involved in a single vehicle accident on State Highway 82 near Strang Road.

10. The accident was investigated by Oklahoma Highway Patrol Trooper Colby Overstreet. The investigating trooper noticed that Dodson had an odor of alcohol and slurred speech, further, Dodson admitted to consuming alcohol prior to the accident.

11. An ambulance arrived at the scene and Dodson was examined.  Upon information and belief, after being examined the Trooper Overstreet patted down Dodson and did not find any weapons or contraband on her body.

12. Dodson was wearing tight jeans with a tank top and a hoodie.

13. Dodson was handcuffed and sat in front seat of the officer's car.

14. Trooper Overstreet arrested Dodson on the basis of driving under the influence, took her into custody, and transported her to the County's Sheriff Department.

15. Dodson did not resist arrest and cooperated with Trooper Overstreet.

16. Upon arriving at the Sheriff's Department, the trooper escorted Dodson to the booking area where Dodson encountered a number of sheriff deputies, including but not limited to Derek Davis and Jennifer Eastwood.

17. Upon information and belief, Dodson was frisked by a deputy and no weapons or contraband were found on her body.  Dodson requested a phone call and to use the restroom and was told she needed to wait.

18. Dodson was placed in a detox cell and was requested by deputy Eastwood to remover her jewelry.  Dodson removed her jewelry and gave it to Eastwood.

19. Thereafter, Eastwood escorts Dodson to a small room and asks her to remove her clothing. Eastwood told Dodson she wanted to perform a strip search.

20. Dodson became upset and began crying and asked Eastwood if she could use the restroom because she was menstruating; however, she was not combative.  Eastwood continued to demand Dodson to remove her clothing.

21. Deputy Eastwood, became aggressive with Dodson and told her if she did not remove her clothing she would shoot her.

22. Deputy Eastwood, pulled a gun from her holster and held it approximately twelve (12) inches from Dodson's face and told her if she did not remove her clothing she would shoot her and began counting.

23. Upon information and belief Deputy Dereck Davis heard Eastwood tell Dodson that she would be shot if didn't remove her clothing.

24. Deputy Eastwood told Dodson she can ask three times before I shoot. Deputy Eastwood asked one more time and then pulled the trigger of her gun; however, the gun did not fire.

25. Upon information and belief, Deputy Eastwood called out to Davis to have her bring another cartridge for her gun. Davis did bring her another cartridge.

26. Upon receiving another cartridge from Davis, Deputy Eastwood loaded her gun and shot Dodson in the eye with a pepperball.

27. The force of the shot knocked Dodson to the ground and upon information and belief caused her to become unconscious.

28. Upon information and belief, while Dodson was unconscious Deputy Eastwood placed her hands on Dodson and removed all of her clothing and performed a strip search.

29. When Dodson became conscious she was lying on the floor of the room where she was shot and was naked being sprayed with water by Deputy Eastwood.

30. Dodson was bloody and was in severe pain.

31. An inmate uniform was placed on Dodson and she was escorted to a detox jail cell where she remained until the next morning. Dodson was merely awaiting bail, she was not to be detained for a long period of time or maintained in the general population of the jail. The next morning Dodson was escorted to a different cell where she stayed for a few hours and was taken to an office where a nurse asked Dodson if she could see. Dodson said "no" and the nurse responded "yeh you

can your pupil is dialating".  Dodson was taken back to her cell and was given an ice pack for her

eye.

32. Dodson remained in the cell until she saw a judge in the afternoon and posted bond and

was released.

33. Dodson was not given any medical treatment for her injuries while she was in custody.

34. On or about February 27, 2014 at 2:24 Dodson was released from custody.

35. Deputy Eastwood's use of the pepper gun and strip search was excessive and unreasonable

given the circumstances.  Deputy Eastwood's use of the pepper gun and strip search was in

violation of the Sherriff's policies and the pepper gun manufacturer user / training manual.

36. At the time of the incident in question the Mike Reed, Gary Shrum, and Kyle Murry had

enacted the following Frisk Search policy, which reads in pertinent part:

### POLICY

Staff members of the Mayes County Jail Facility will make every reasonable effort to prevent the introduction of contraband to the facility while inspecting persons and property of persons and property of persons being admitted.  Inmates will be searched by the Jail Facility Officers of the same sex, except in emergency situations.

### PROCEDURE

1. **Frisk Search:** When an inmate has been accepted into custody, the Receiving Officers will immediately conduct a frisk search of the inmate being booked in to determine if any contraband articles are being concealed on the inmate.

2. **Conduct:**  The frisk search will be performed in accordance with established procedures (See Appendix) and with the greatest degree of dignity possible for the inmate.  Under no circumstances will Jail Facility Officers direct any personal remarks to the inmate being frisk searched concerning his person, attire, or physical attributes.

3. **Contraband:**  In the event contraband may be found on an inmate, the Receiving Officer will report the contraband to the Shift Officer.  The Shift Officer will then consider whether to conduct a strip search pursuant to the guidelines set forth in Section 2.15 of this manual.  Any contraband found will be noted on the inmate's book-in sheet and the Supervisor's Log.

37. At the time of the incident in question the Mike Reed, Gary Shrum, and Kyle Murry had enacted the following Strip Search policy, which reads in pertinent part:

POLICY

The Mayes County Jail Facility strives to protect and preserve the dignity and civil rights of all pre-trial detainees and convicted inmates to the greatest extent possible while ensuring the security of the facility and safety of the personnel and other inmates. Strip searches will only be conducted in the appropriate circumstances and in accordance with written procedure.

PROCEDURES

1.  **Reasonable Suspicion Required:**  No strip search will be performed on any arrestee or inmate unless a Jail Facility Officer has reasonable suspicion that the person possesses a weapon or contraband.  Reasonable suspicion may be based on factors such as:
- Nature of offense charged
- Arrestee's appearance and conduct
- Prior arrest record

**Reasonable suspicion may not be based solely on the nature of the offense charged.**

2.  **Notify Shift Officer:**  Once the Jail Officer has formed a basis for reasonable suspicion that a detainee/inmate has contraband or a weapon concealed on his or her person, the Jail Officer will notify the Shift Officer.  The Shift Officer must give approval in writing before a strip search may be performed.

3.  **Search Procedure:**  The following procedure will be used when conducting strip searches:
- Instruct inmate to remove all clothing
- Instruct inmate to brush out hair with hands
- Instruct inmate to stand facing Officer with arms extended outward from his or her body
- Visually inspect anteriorly of the body for any marks, bruises, cuts, lacerations, or contraband
- Instruct inmate to turn his or her back to the Office, arms extended outward from his or her body
- Visually inspect posteriorly of body for any marks, bruises, cuts, lacerations, or contraband
- Instruct inmate to raise feet and visually inspect soles for marks, bruises, cuts, lacerations or contraband
- Instruct inmate dress in provided standard jail facility uniform

- Inventory inmate's clothing, exercising caution to avoid being cut by concealed sharp instruments, and place in inmate's locker

4. **Incident Report:**  The Officer who performs the strip search will immediately prepare a written incident report.  The incident report will document:
- The factors which support the determination of reasonable suspicion
- A description of the search
- Detailed description of any contraband found
- any other unusual or notable occurrences

**The Incident Report must be signed by both the Shift Officer and the Jail Officer conducting the search.**

5. **Prohibited Actions:**  The following prohibitions must be observed during a strip search:
- Officers will not touch an inmate's body
- Officers will not search an inmate's body cavities or body orifices
- Officers will not make personal remarks regarding the inmate's personal or physical characteristics
- No other inmates will be present

38. At the time of the incident in question the Mike Reed, Gary Shrum, and Kyle Murry had enacted the following Use of Force / Deadly Force policy, which reads in pertinent part:

### 4.08.4  POLICY

Every reasonable effort will be made to prevent any situations which require the use of force.  If at all possible, non-forceful means (verbal intervention, negotiation, show of force, etc.) will be attempted before using force as a last report.  Verbal provocation alone will not justify the use of physical for[c]e.
The use of any type of force for punishment or reprisal, or which is unnecessary or excessive, is strictly prohibited.  The amount and type of force used will be the least possible and then only as a last resort, consistent with the safety of the public, staff and inmates.

Personnel will authorized to use force only if the employee has successfully completed training its use.

### 4.08.5  PROCEDURES

When negotiations have been utilized or found to be impractical, use of force is justified to maintain or restore safety, security and control.  The method(s) of force employed will be most practical and humane under the circumstances.

The following are the specific types of force allowed and applicable procedures:

…

## C. INFLAMMATORY AGENTS

1. INFLAMMATORY AGENTS (products such as Oleoresin Capsicum Pepper Spray and Oleoresin Capsicum/CS Pepper Grenades) MAY BE USED IN THE FOLLOWING SITUATIONS:

- In self-defense and in defending the general public, staff and inmates such as:
- To prevent or quell a disturbance
- To enforce regulations and/or orders in which violation of may threaten security and safety
- To prevent or halt damage to property
- To prevent escape

2. The amount of force used in the use of inflammatory agents will be no more than is necessary to control the situation.

3. Inflammatory agents will only be used by staff that has successfully completed training in its use.

Inflammatory agents will not be carried by individual staff into inmate contact living areas. Placement of inflammatory agents in contact inmate living areas shall require the approval of the Jail Administrator/designee. Inflammatory agent spray will be weighed and logged upon reception, quarterly, and after each use. Upon expiration the Jail Administrator/designee will ensure proper disposal. When no in use inflammatory agents will be stored in Central Control.

39. Earlier in the day on February 26, 2014, when an inmate asked Deputy Eastwood for a mint she reached for her pepperball gun and stated that "i'm gonna use this on someone before the nights over."

40. Upon information and belief, Defendants Mike Reed, Gary Shrum, Kyle Murry, Derek Davis, and John Doe's 1-8, were present for Deputy Eastwood's excessive use of force against Dodson and failed to intervene to prevent Deputy Eastwood's use of excessive force against Dodson.

41. Upon information and belief, prior to Dodson being taken into custody of the County and Sheriff Department, Mike Reed, Gary Shrum, and Kyle Murry had failed to:

a) Create, implement, and enforce proper policies and procedures relating to the use of pepperballs;

b) Provide proper and adequate training and supervision to Sheriff Officers, including but not limited to Deputy Eastwood and Davis, regarding the proper use of pepperballs;

c) Create, implement, and enforce proper policies relating to the use of strip searches;

d) Provide proper and adequate training and supervision to Sheriff Officers, including but not limited to Deputy Eastwood and Davis, regarding the proper use of strip searches;

e) Create, implement, and enforce policies relating to the use of excessive force;

f) Provide proper and adequate training and supervision to Sheriff Officers, including but not limited to Deputy Eastwood and Davis, regarding excessive force;

42. The County, the Sheriff Department, Mike Reed, Gary Shrum, and Kyle Murry knew and/or reasonably should have known that those taken into custody by the Sheriff's Department were subjected to and/or unreasonably at the risk of being subjected to excessive force and danger.

43. Upon information and belief, The County, the Sheriff Department, Mike Reed, Gary Shrum, and Kyle Murry had knowledge of other inmates asserting verifiable claims of being subjected to excessive force and danger while in custody of the Sheriff's Department.

44. The County, the Sheriff Department, Mike Reed, Gary Shrum, and Kyle Murry knew of the asserted danger to Dodson and failed to exercise professional judgment to protect her from such danger.

45. As a direct and proximate result of the Defendants' conduct, actions, and/or inactions the Plaintiff has suffered severe personal injuries, medical expenses, pain and suffering, mental anguish, and lost wages.

**FIRST CAUSE OF ACTION**
**(MIKE REED, GARY SHRUM, KYLE MURRY, JENNIFER EASTWOOD,**
**DEREK DAVIS AND JOHN DOES NOS. 1-8,**
**42 U.S.C. § 1983; U.S. CONST. AMEND. IV AND XIV)**

46. Plaintiff incorporates the allegations set forth in paragraphs 1 through 45, as if fully set forth herein.

47. When Dodson was taken into the care and custody of the County and Sheriff Department a special relationship was created whereby an affirmative duty existed to ensure the protection, safety, and well-being of Dodson. Such duty existed at the time Dodson was taken into custody and extended through the entire time until she was released.

48. No reasonable suspicion existed to support the fact that Dodson possessed any type of contraband or drugs on her body. Despite no reasonable suspicion existing, Defendant Eastwood strip searched Dodson.

49. Defendant Eastwood's act of strip searching Dodson was an exaggerated response to any legitimate security interest and was an unreasonable invasion into the personal rights of Dodson.

50. Defendant Eastwood's use of an inflammatory agent to the eyes of Dodson was unreasonably excessive and exceeded the amount and type of force necessary to meet the need presented.

51. Defendant Eastwood's use of an inflammatory agent to the eyes of Dodson was excessive as it was not committed in self-defense, in defense of the general public, staff, or inmates. Eastwood was not attempting to prevent an escape or damage to property. Further, Eastwood was not attempting to prevent a disturbance within the jail or to ensure the security or safety of others.

52. Defendant Eastwood's use of an inflammatory agent was excessive as she inflicted severe and permanent injury to Dodson.

53. Upon information and belief, Defendants' Mike Reed, Gary Shrum, Kyle Murry, Derek Davis, and John Does Nos. 1-8, were present at the time of Eastwood's actions and failed to intervene to prevent the use of excessive force and unreasonable actions taken against Dodson which resulted in a violation of her right pursuant to U.S. Const. amend. IV and XIV.

54. Upon information and belief, Defendant Eastwood attempted to fire her pepperball gun at Dodson and did not fire. She then called out to Defendant Davis to bring her an additional cartridge, which with full knowledge of the situation and that Dodson did not pose a threat Defendant Davis brought a cartridge to Defendant Eastwood. Defendant Davis brought the cartridge to assist Defendant Eastwood and with full knowledge that Defendant Eastwood would shoot Dodson with an inflammatory agent. At no time did Defendant Davis intervene to prevent the use of excessive force and unreasonable actions against Dodson, rather, Defendant Davis participated in the use of excessive force, which resulted in a violation of her right pursuant to U.S Const. amend. IV and XIV.

55. Upon information and belief, after Dodson suffered severe personal injury from the use of excessive force, Defendants' Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, were aware of her injuries failed to provide Dodson with the necessary and proper medical treatment, which was in violation of her rights pursuant to U.S. Const. amend. IV and XIV.

56. Defendants' Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, failed to ensure Dodson's reasonable care and safety while in custody, were

deliberately indifferent to Dodson's needs, suspected or knew that Dodson's placement in custody was dangerous all in violation of her rights pursuant to U.S. Const. amend. IV and XIV.

57. Defendants' Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, acts, and omissions to act, were arbitrary, reckless, and motivated by malice or excessive zeal which amounted to an abuse of power completely indifferent to Dodson's federally protected rights and was such an abdication of professional responsibility to shock the conscience of any reasonable being.

58. As a result of Defendants Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, violations of Dodson's federally protected rights, Dodson endured physical torture, abuse, pain, suffering, mental pain and anguish.

Wherefore, Dodson prays judgment against Defendants, Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, and medical expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorney's fees; and exemplary and punitive damages against such Defendants in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code to deter such Defendants from committing such reckless and indifferent violations of federally protected rights in the future and to apprise the public at large that society does not condone such violations of rights.

**SECOND CAUSE OF ACTION**
**(MIKE REED, GARY SHRUM, KYLE MURRY, JENNIFER EASTWOOD,**
**DEREK DAVIS AND JOHN DOES NOS. 1-8,**
**NEGLIGENCE / ASSAULT AND BATTERY)**

59. Plaintiff incorporates the allegations set forth in paragraphs 1 through 45, as if fully set forth herein.

60. Defendants' Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, owed a duty to Dodson of due care and to take reasonable measures for her safety and well-being while in custody. When Dodson was taken into custody a special relationship was created whereby an affirmative duty existed to ensure the protection, safety, and well-being of Dodson. Such duty existed at the time of Dodson being taken into custody and extended until the time of her release.

61. On or about February 26, 2014, Defendant Jennifer Eastwood with the assistance of Derek Davis, without adequate reason or need, physically assaulted and battered Dodson while in custody.

62. Upon information and belief, Defendants Mike Reed, Gary Shrum, and Kyle Murry were present at the time of the assault on Dodson and failed to take action to intervene. Further, after possessing knowledge of Dodson's injuries Defendants Mike Reed, Gary Shrum, and Kyle Murry failed to provide Dodson with the necessary and proper medical treatment.

63. Defendants' Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, breached their duty, and such breach was a proximate and direct cause of Dodson's severe and permanent injuries.

64. Such breach of duty was in bad faith, and in reckless disregard of Dodson's rights, was intentional and without cause or excuse.

65. As a result of Defendants' Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8 negligence, Dodson endured physical torture, abuse, pain, suffering, mental pain and anguish.

Wherefore, Dodson prays judgment against Defendants, Defendants' Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, and medical expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorney's fees; and exemplary and punitive damages against such Defendants in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code to deter such Defendants from committing such reckless and indifferent violations of federally protected rights in the future and to apprise the public at large that society does not condone such violations of rights.

### THIRD CAUSE OF ACTION
### (MIKE REED, GARY SHRUM, KYLE MURRY, AND JOHN DOES NOS. 1-8, SUPERVISOR LIABILITY; 42 U.S.C. § 1983; U.S. CONST. AMEND. IV AND XIV)

66. Plaintiff incorporates the allegations set forth in paragraphs 1 through 45, as if fully set forth herein.

67. Defendants' Mike Reed, Gary Shrum, Kyle Murry, and John Does Nos. 1-8 held supervisory positions with the County and Sheriff Department who were directly involved in the creation and implementation of policies, oversight and training of Sheriff Department employees, and were directly involved in Dodson being taken into custody and care.

68. Defendants' Mike Reed, Gary Shrum, Kyle Murry, and John Does Nos. 1-8 failed to adopt and implement policies, customs, training, and/or practices designed to prevent Sherriff and County employees from using or allowing brutality, excessive force, unreasonable force, and unwarranted force.

69. Upon information and belief, Defendants' Mike Reed, Gary Shrum, Kyle Murry, and John Does Nos. 1-8 were responsible for all beneath them, including but not limited to Defendants Eastwood, Davis, and John Doe Nos. 1-8.

70. Upon information and belief, Defendants Eastwood, Davis, other Mayes County Sheriff's Officers, employees and agents, and John Doe Nos. 1-8, were improperly supervised and trained, causing a pattern of unconstitutional acts.

71. Upon information and belief, Defendants' Mike Reed, Gary Shrum, Kyle Murry, and John Does Nos. 1-8 the need of additional and different training was so obvious to them that they were deliberately indifferent to the acts of Sheriff Department personnel, including but not limited to Defendants Eastwood, Davis, and John Doe Nos. 1-8. This resulted in the knowing creation of a dangerous environment for Dodson and all others taken into custody who may come in contact with them.

72. Upon information and belief, Defendants' Mike Reed, Gary Shrum, Kyle Murry, and John Does Nos. 1-8 failed to ensure Dodson's reasonable care and safety while in custody, were deliberately indifferent to the amount of force utilized, suspected or knew that Dodson being taken into custody was dangerous, all in violation of her rights pursuant to U.S. Const. amend. XIV.

73. Upon information and belief, Defendants' Mike Reed, Gary Shrum, Kyle Murry, and John Does Nos. 1-8 acts and omissions to act, to properly train and supervise their subordinates was reckless and each was callously indifferent to their duty to train and supervise their subordinates, and to Dodson's federally protected rights.

74. As a result of Defendants' Mike Reed, Gary Shrum, Kyle Murry, and John Does Nos. 1-8 failure to train and supervise their subordinates directly and proximately caused violations of

Dodson's federally protected rights, which caused Dodson to endured physical torture, abuse, pain, suffering, mental pain and anguish.

75. In committing the acts complained of herein, Defendants acted under color of law to deprive Dodson of her constitutionally protected rights.

Wherefore, Dodson prays judgment against Defendants, Mike Reed, Gary Shrum, Kyle Murry, and John Does Nos. 1-8 in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, and medical expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorneys fees; and exemplary and punitive damages against such Defendants in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code to deter such Defendants from committing such reckless and indifferent violations of federally protected rights in the future and to apprise the public at large that society does not condone such violations of rights.

## FOURTH CAUSE OF ACTION
### (THE COUNTY AND SHERIFF DEPARTMENT: OGTCA / NEGLIGENCE / RESPONDEAT SUPERIOR VIA MIKE REED, GARY SHRUM, KYLE MURRY, JENNIFER EASTWOOD, DEREK DAVIS AND JOHN DOES NOS. 1-8)

76. Plaintiff incorporates the allegations set forth in paragraphs 1 through 45, as if fully set forth herein.

77. Defendants Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, owed a duty to Dodson of due care and to take reasonable measures for her safety and well-being while in custody of the County and Sherriff Department. When Dodson was taken into the custody of the County and Sheriff Department a special relationship was created whereby an affirmative duty existed to ensure the protection, safety, and well-being of Dodson.

Such duty existed at the time Dodson was taken into custody and extended through the time of her release.

78. Defendants Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8, were acting in the scope of their employment, but breached their duty by failing to implement, enforce, and act according to Sheriff Department policy and clearly established law, reasonably caring for Dodson, providing her needed medical treatment, keeping Dodson free from the unreasonable searches and use of force, and keeping her reasonably safe while in custody.

79. That such breach was a proximate and direct cause of Dodson's severe and permanent injuries.

80. Defendants the County and the Sherriff Department are liable for Defendant Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8 acts and omissions under the doctrine of respondeat superior and the provisions of 51 O.S. §151, *et seq.*

81. As a result of the County and Sherriff Department's negligence, Dodson endured physical torture, pain, suffering, mental pain and anguish.

Wherefore, Dodson prays judgment against Defendants the County and Sherriff Department, in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and anguish, and medical expenses, plus pre-judgment and post-judgment interest, and costs, including reasonable attorney's fees.

**FIFTH CAUSE OF ACTION**
**(THE COUNTY AND SHERRIFF DEPARTMENT: OKLA. CONST. ART. 2, §30 RESPONDEAT SUPERIOR VIA MIKE REED, GARY SHRUM, KYLE MURRY, JENNIFER EASTWOOD, DEREK DAVIS AND JOHN DOES NOS. 1-8)**

82. Plaintiff incorporates the allegations set forth in paragraphs 1 through 45, as if fully set forth herein.

83. At all times relevant hereto, Defendants Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8 were employed by the County and/or Sheriff Department and were acting as State actors within the scope of their employment.

84. Defendants Mike Reed, Gary Shrum, Kyle Murry, and John Does Nos. 1-8 held supervisory positions with the County and/or Sheriff Department who were directly involved in the creation and implementation of policies, oversight and training of Sheriff Department employees.

85. Upon information and belief, Defendants Mike Reed, Gary Shrum, Kyle Murry were responsible for all beneath them, including Defendants Jennifer Eastwood, Derek Davis, and John Doe Nos. 1-8.

86. Upon information and belief, Defendants Mike Reed, Gary Shrum, Kyle Murry were aware that their subordinates, including the Defendants Jennifer Eastwood and Derek Davis and John Doe Nos. 1-8, were improperly supervised and trained, causing a pattern of unconstitutional acts.

87. Upon information and belief, Defendants Mike Reed, Gary Shrum, Kyle Murry were deliberately indifferent to the acts of Sheriff Department personnel, including but not limited to the Defendants Jennifer Eastwood and Derek Davis and John Doe Nos. 1-8. This resulted in the knowing creation of a dangerous environment for Dodson and all other inmates who may come in contact with Sheriff Department personnel.

88. The Defendants Mike Reed, Gary Shrum, Kyle Murry, and Derek Davis and John Does Nos. 1-8, were responsible for providing oversight of Dodson by ensuring implementation of

Sheriff Department policy, that she was reasonably cared for, free from excessive force and abuse, and kept reasonably safe while in custody.

89. Upon information and belief, Defendants Mike Reed, Gary Shrum, Kyle Murry, and Derek Davis and John Does Nos. 1-8, were present when Defendant Jennifer Eastwood used excessive force upon Dodson and failed to intervene to prevent the use of such excessive force.

90. That on or about February 26, 2014, Defendant Jennifer Eastwood used excessive force upon Dodson which was the proximate and direct cause of her severe bodily injuries.

91. Defendants Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, and Derek Davis and John Does Nos. 1-8 owed a duty to Dodson of due care and to take reasonable measures for her safety and well-being while in custody.

92. Defendants Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, and Derek Davis and John Does Nos. 1-8 breached their duty, and such breach was a proximate and direct cause of Dodson's severe personal injuries.

93. As a result of Defendants' Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, and Derek Davis and John Does Nos. 1-8 conduct, Dodson was subjected to excessive force, severe bodily injury, and endured physical torture, pain, suffering, mental pain and anguish.

94. Defendant County and The Sheriff Department are liable for Defendants Mike Reed, Gary Shrum, Kyle Murry, Jennifer Eastwood, Derek Davis, and John Does Nos. 1-8 acts and omissions to act under the doctrine of respondeat superior.

Wherefore, Dodson prays judgment against the Defendant County and The Sheriff, in an amount which exceeds the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, for physical torture, abuse, pain, suffering, mental pain and

anguish, loss of capacity, medical expenses, plus pre-judgment and post-judgment interest, and

costs, including reasonable attorney's fees.


Respectfully submitted,


/s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
danielsmolen@ssrok.com
bobblakemore@ssrok.com
bryonhelm@ssrok.com