IN THE UNITED STATES DISTRICT COURT7
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATASHA DODSON, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 18-CV-221-TCK-CDL |
| MIKE REED, in his official capacity, | ) |
|       Defendant, | ) |

**OPINION AND ORDER**

Before the Court is the Joint Motion to Exclude Expert Testimony of Robert Fonzi ("Fonzi") filed by Defendant Mike Reed Doc. 105.[1] In the Motion, Reed argues that Fonzi's opinions as to underlying constitutional violations invade the province of the jury and usurp the function of the Court; Fonzi does not apply specialized knowledge; and his opinions are incomplete. *Id.*

Plaintiff opposes Reed's motion. Doc. 120.

**I. Background**

Following a single-vehicle rollover accident on February 26, 2014, Dodson was arrested for driving under the influence, and subsequently transported and booked into the Mayes County Jail. During the booking process, Officer Jennifer Eastwood ("Eastwood") conducted a search of Dodson's purse, in which she found a metal pipe and a container with multiple pills, one of which was identified as Lortab. Thereafter, Eastwood took Dodson into a bathroom near the jail's booking area, and told her that a strip search was mandatory. After attempting unsuccessfully to

---

[1] Defendant Jennifer Eastwood was originally joined in the Motion to Exclude. Doc. 105. However, on September 29, 2021, the parties filed a Joint Stipulation of Partial Dismissal, dismissing Plaintiff's claims against Defendant Eastwood, thereby rendering the pending motion moot with respect to Eastwood. Doc. 149.

handcuff Dodson, Eastwood deployed a Jet Protector ("JPX") toward Dodson's face, and then conducted the search. Dodson was released the following day.

Dodson sued Eastwood individually and Sheriff Reed in his official capacity, asserting claims for unlawful search, excessive force and denial of medical care in violation of 42 U.S.C. §1983 (Count A) against Eastwood, and a claim for official capacity liability against Sheriff Reed (Count B). Doc. 69. The Amended Complaint alleged that prior to Dodson being taken into custody of the County, Sheriff Reed failed to:

> a. Create, implement, and enforce proper policies and procedures relating to the use of the JPX Jet Protector;
> b. Provide proper and adequate training and supervision to Sheriff Officers, but not limited to Deputy Eastwood and Davis, regarding the proper use of the JPX Jet Protector.

Plaintiff sought actual, compensatory and punitive damages for, *inter alia*, physical torture, abuse, pain, suffering, mental pain and anguish, loss of capacity and medical expenses. *Id.*

Both Eastwood and Reed filed motions for summary judgment. Docs. 103, 106. In his motion, Reed argued that even if Dodson's allegations regarding Eastwood's use of the JPX were construed in the light most favorable to Dodson, the evidence nevertheless establishes that Eastwood was properly trained on the use of the JPX.

On September 13, 2021, the Court granted Eastwood's motion with respect to Dodson's unlawful search and denial of medical care claims and denied the motion with respect to her excessive force and punitive damages claims. Doc. 145. The same day, the Court entered an order granting Reed's motion with respect to Dodson's claim that the mandatory strip search was, *per se*, unconstitutional, and denying it with respect to Reed's claim that Eastwood was properly trained in the use of the JPX. Doc. 146. In so ruling, the Court noted that Sheriff Reed had decided to bring the JPX into the jail as "a compliance tool other than a Taser," and observed Robert

Jackson, the Jail Administrator at the time the JPX weapons were acquired, had testified, based on his training, that it was his understanding the device was supposed to be used only when an officer felt threatened, and he "didn't see [any]reason why to use it, other than if someone was. . . threatening you." Doc. 126, Ex. 28, Jackson Dep., 61:9-25.

On September 29, 2021, the parties filed a Joint Stipulation of Partial Dismissal, in which Plaintiff's claims against Eastwood were dismissed in their entirety, and the parties stipulated that Plaintiff "has not brought, and does not maintain, a claim for denial of medical care (or deliberate indifference to Plaintiff's serious medical needs) against Defendant Mike Reed, in his official capacity." Doc. 149.

The Court's Opinions and Orders of September 13, 2021 disposed of the Plaintiff's claim that the Jail's strip search policy was unconstitutional. Accordingly, Fonzi's proposed testimony regarding the constitutionality of the strip search is moot. The Plaintiff's voluntary dismissal of her remaining claims against Eastwood disposed of any claim against her for unconstitutional use of force.

Still at issue is the admissibility of Fonzi's opinions regarding the constitutionality of the use of the JPX as a compliance tool.

**II. Applicable Law**

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

3

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149 (1999). The proponent of the testimony bears the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*); Fed. R. Evid. 104(a). A trial court's gatekeeper duty requires two separate inquiries: (1) whether the witness is qualified to offer the opinions he is espousing and (2) whether the proponent of the witness has proven by a preponderance of the evidence that its witness's opinions are both relevant and reliable. *Kumho Tire,* 526 U.S. at 141, 152.

### III. Analysis

In his March 22, 2019 report, Fonzi opined:

> Based on my review of the aforementioned materials and statements, it is my opinion that the level of force deployed by Deputy Eastwood was not justified based on the alleged level of resistance offered by Dodson. The level of force employed by Deputy Eastwood under the circumstances was unreasonable and excessive with respect to the objectively reasonable standard and training.
>
> The deployment of the JPX from a distance less than five feet from Dodson's face was unreasonable, excessive, and in violation of Mayes County Sheriff's Department's use of force polic[i]es and all warnings outlined in training with respect to minimum distance.

Doc. 105, Ex. 1, Fonzi Report, p. 17. He further stated:

> Based on my review of the listed materials it is my opinion, as determined by standard jail practices and training, that Deputy Eastwood did not follow, nor did she comply with appropriate department policies and training as it relates to the use of reasonable force and the use of the JPX Jet Protector under the circumstances.
>
> * * *
>
> It is clear from the physical evidence that Deputy Eastwood violated the training and manufacture[r]'s warning related to the minimum distance of five (5) feet. The undisputed injuries sustained by Dodson clearly support the factual belief that the JPX was deployed within the minimum distance of five (5) feet.

4

Doc. 105, Ex. 1 at p. 6.

Fonzi's report did not criticize the Sheriff Department's practice of using the JPX as a compliance tool rather than a defensive tool. *Id.*[2] However, in his deposition, Fonzi testified that he believes the JPX "wasn't used in a manner in which it was intended and the training provided to . . . Officer Eastwood was substandard based on her statements, her deposition testimony, as well as Oberg." Doc. 120, Ex. 2, Fonzi Dep. at 143:17-144:6.[3]

Defendants assert that Fonzi's opinions are not based on specialized expertise, but on Dodson's "one-sided, incomplete view of the case." Doc 105 at 10. In particular, they contend that Fonzi relied "explicitly on the <u>allegations</u> in Dodson's Complaint to form his belief about Eastwood's location when she discharged the JPX and the level of resistance Dodson offered." *Id.* at 10-11.   Additionally, they argue that Fonzi inappropriately assesses the credibility of witnesses; impermissibly applies the facts to the relevant legal standards; renders opinions that usurp the function of the Court; does not apply specialized knowledge; and that his opinions are incomplete. *Id.* at 11-24.

---

2 The report's conclusion contained the following caveat:

> The foregoing opinions are based upon my review of the materials and information received to date concerning the incident that gave rise to this investigation. I understand that there may be depositions not yet conducted in the case and/or additional discovery may be produced by any party. Thus, to that extent, this report should be considered a preliminary report. Should I receive additional information that materially affects any of these opinions; I will submit a supplemental report and/or be prepared to discuss them during future proceedings, as appropriate. . . .

Doc. 120, Ex. 5 at p. 17.

3 Oberg testified she had "never been trained that the JPX was a self-defense weapon," and instead, was trained that the JPX is a "compliance tool," *i.e.*, "a tool to enforce compliance with orders, directives and rules." Doc. 120, Ex. 3, Oberg Dep. at 69:4-70:18.

5

While it is true that Fonzi's report is based in part on the allegations of the Complaint, the report also references, *inter alia*, the February 27, 2014 report by Jail Administrator Kyle Murry to Sheriff Reed; the February 26, 2014 report by Eastwood; the Mayes County Jail Facility strip search policy 2:15; the safety instruction and warning for the JPX Jet Protector; the Manufacturer's Warning; Mayes County Jail Blueprints; photographs of the bathroom booking photos of Dodson; other photos of Dodson; and Dodson's Deposition Transcript and Exhibits. To the extent the Sheriff disagrees with Fonzi's opinions, he will have ample opportunity to cross examine him at trial.

### IV. Conclusion

For the foregoing reasons, the Sheriff's Motion to Exclude Expert Testimony of Robert Fonzi (Doc. 105) is denied.

ENTERED this 8th day of October, 2021.

_____
**TERENCE KERN**
**United States District Judge**